UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BERNADETTE TAYLOR LOCKETT )
(Pro Se) )
       Plaintiff, ) Case No. 3:20cv191(JAM)
) 
       v. ) **Jury Trial Demanded**
)
TARGET CORPORATION, )
)
       Defendant. )

## SUMMARY OF CLAIM

1. Plaintiff, Bernadette Lockett Taylor (Plaintiff) proceeding Pro Se, alleges that Target and its agents', one of the largest retail corporations in the United States, which owns and operates over 1800 stores worldwide and employs over 300,000 workers annually, has in the past and continues to systemically discriminate against qualified persons of color and women in violation of Title VII of the Civil Rights Act of 1964 and its implementing regulations, as amended 42 U.S.C 1981, 1985, 1986, § 2000e et seq. The Plaintiff contends that Target discriminated against her based on race, sex, and by awarding on false pretense John Sanders, a Caucasian younger male, less qualified than her, the promotion of Receiver promised to her. Plaintiff further asserts that Targets agents' retaliated against her for exercising the protected right to complain about this act of discrimination along with other examples of disparate treatment, and creation of a hostile working environment causing her to suffer demeaning and degrading treatment resulting in a constructive discharge.

## PARTIES

**Plaintiff: Bernadette Lockett Taylor**

2. Plaintiff, Bernadette Lockett Taylor is a 59-year old African American, female, Army Veteran, Gold Star Widow of an Army Infantry Officer and female resident of Bristol, Connecticut.

3. Plaintiff initially worked for the Defendant as a Flow Team member from November of 2006 until 2008. She departed without incident or reprimand in part to work on a Human Rights violations project.

4. Plaintiff returned to Target as a seasonal Flow Team member in October of 2016 when she was 56-years of age.

5. During the application process, Target's agent, Fil Nunez, inquired of the Plaintiff as to whether or not she was interested in employment beyond seasonal work because based on her military experience there was a position she was well suited for as the current employee was failing at the task.

6. Upon completion of her seasonal contract, Plaintiff was offered and accepted the position of Receiver in February of 2017. Fil Nunez requested Plaintiff be patient while funding was sought to send her out for training, not reveal her promotion to anyone in the store and arranged for Plaintiff to be trained once a week by the current Receiver so that he could build bikes in another area. Plaintiff grasped the process quickly facilitating the bike building.

7. While stationed at the 197th Infantry Brigade, Plaintiff as the only female and African American officer, managed the Brigade Alcohol and Drug Program, Civilian Education and Suggestion Program, planned, organized and executed the Brigades' Army Emergency Relief and Combined Federal Campaign Fund, authored an SOP on alcohol and drugs, coordinated soldier health and welfare activities, represented the U.S Army in a joint military exercise with Japan, conducted monthly staff visits and briefed Brigade staff on her findings, "smoothly" completed two major military deployments, and with a staff of five supervised the printing of all unit publications which entailed reviewing, editing and publishing all military orders and command publications while maintaining a military reference library.

8. Additionally, Plaintiff as an Army Officer conducted financial, personal and educational counseling of up to two-hundred soldiers while organizing programs that promoted physical fitness, morale and family unity.

9. Plaintiff's evaluator's spoke of her "…high standards…" "dedication", "loyalty", and "initiative" and how she was seen as a "…highly respected, trusted officer who…established an excellent reputation throughout the company".

10. Plaintiff's last assignment in the Army reflected her professionalism and how her senior raters viewed her, it was as Project Officer/Guest Speaker Program for the United States Army Infantry School. A high profile position that required daily interactions with VIP's, where she was evaluated as "Extremely loyal and faithful to superiors, peers, and subordinates, above reproach and totally honest" before her departure.

11. Plaintiff's resume reflected five years of working for a residential summer camp where she developed a camp budget, maintained records on camp purchases, camper registrations, ensured adherence to public health regulations, ordered, received, inspected, inventoried, and documented all kitchen staples and camp

equipment. In addition, she interviewed, hire, trained and supervised a staff of twenty-five.

**Defendant: Target**

12. Defendant is a retail establishment with over 1,800 stores worldwide, including in Connecticut, it employs over 300,000 workers, and is headquartered in Minneapolis, Minnesota.

13. Defendant is an employer defined by Title VII of the Civil Rights Act and continues to conduct business in the state of Connecticut.

14. Defendant advertises as a participant in the Veteran Jobs Mission program, spearheaded by JPMorgan Chase, led by former Army Infantry Officer Jason Wright, to assist veterans and military spouses with finding employment. Mission, increase retention and career development for veterans in the private sector.

15. Defendant engaged in documented systemic discrimination by denying employment to over 41,000 Black and Latino job applicants simply because they had a criminal record.

16. Defendant has a storewide policy regarding no call no show. If a team member fails to show up or call out for scheduled work they receive a written counseling and become ineligible for promotion or store transfer for six months.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the subject matter pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

18. Venue is proper in this judicial district and Defendant and its agents' are subject to the personal jurisdiction of this Court because Defendant maintains facilities and business operations in this District, and all of the events giving rise to this action occurred in this District. 28 U.S.C § 1391(b)

## STATEMENT OF FACTS

19. Defendant's agent, Fil Nunez, hired Plaintiff, an African American female Army Veteran, in October of 2016 as a seasonal employee. The Defendant's agent expressed interest in her continued employment in a different position when her seasonal commitment was up.

20. The seasonal position paid an hourly rate of $10.50, open work schedule (meaning week-end work), with working hours fluctuating between 40-60 every two-weeks.

21. The Defendant's agent, Fil Nunez, in February of 2017 offered the Plaintiff a promotion, to take over as Receiver. The Plaintiff accepted the offer. The duties of a Receiver were comparable to those she executed for five years while working at a residential camp and those she executed on a larger scale while in the Army.

22. Target's agent's Fil Nunez and Courtney Hill informed Plaintiff there would receive a pay increase, guaranteed forty-hours, with a Monday-Friday workweek.

23. Defendant's agents Nunez and Hill, requested Plaintiff not tell anyone in the store of her promotion as they worked on removing the current Receiver (Michael Lee) and receive in store training from him while funds were sought for two-week out of store training. Plaintiff agreed to their requests.

24. Plaintiff quickly mastered the process and was able to work alone on her training day so that Mr. Lee could build bikes for the Gaetano Chiurillo, former employee of Target, in another area of the store.

25. March of 2017, Plaintiff turned down an offer for full employment a Paraprofessional in her town due to having accepted the promotion as a Receiver for the Defendant.

26. April of 2017, Plaintiff inquired about an opening with Human Resources with Target. Target's agent Aimee Nunez discouraged her and suggested she speak to Fil Nunez. Mr. Nunez discouraged Plaintiff from applying for the job by telling her she'd be "bored" and to be patient as they worked on getting the funds for training outside of the store. Plaintiff agreed to honor the request.

27. April 7, 2017, Plaintiff received her performance review from Courtney Hill. Ms. Hill assessed the Plaintiff as being "…a great asset…positive, helpful and team-oriented…" In addition she stated that the Plaintiff "…reported to work for [ ] scheduled shifts…"

28. May of 2017, John Sanders, made it known that Defendant's agent, Fil Nunez, gave him the Receiver position because he threatened to quit. Plaintiff had no reason to believe this due to the Defendant's agents', Fil Nunez and Courtney Hill's assurances that the position and promotion was hers.

29. August of 2017, Plaintiff witnessed Mr. Sanders working as Receiver. Plaintiff inquired of her Caucasian supervisor, Courtney Hill, the status of her promotion as Receiver. Ms. Hill stated she had nothing to do with the change. Plaintiff engaged the Defendant's agent, Ms. Hill, in protected speech and stated she believed she was being discriminated against.

30. Defendant's agent, Fil Nunez, found money to send Mr. Sanders for out of store training whereas the Plaintiff was never afforded such training, after training Mr. Sanders still needed assistance so someone from

      another store came in for a period of time to help him, and still unable to grasp the position Mr. Lee, the former Receiver was made to assist him.

31. John Sanders, was hired in October of 2016 as a convicted felon on probation, he was ineligible for a promotion until November of 2017 due to violating Target's no call no show policy on May 26, 2017.

32. Plaintiff after exercising protected speech saw a reduction in her scheduled work hours resulting in a decrease in her paycheck, and a "spook" sign was placed in the area Plaintiff worked in by Mr. Sanders.

33. The "spook" sign was placed in an area where Plaintiff, other Target employees and management could easily and clearly see it.

34. Courtney Hill, Target's agent, was overheard on numerous occasions referring to an African American Target employee as "my negro", she allowed Caucasian employees coming in late to alter their time, (violating Targets' policy and procedures), she attended after work social events with Mr. Sanders who also coached her football team, allowed a Caucasian employee due to a hangover to sleep in Fil Nunez's office, (using his jacket as a blanket) during work hours, and prevented African American and Latino employees from receiving certain display furniture by posting a sign with the name of a Caucasian employee.

35. Defendant's agent and store manager Kyle Wilhelmy, targeted in an embarrassing and humiliating fashion, an African American female employee for wearing black pants as opposed to khaki even though there were Caucasian employees engaging in the same practice. The African American employee was forced by Mr. Wilhelmy to disclose on more than one occasion the fact that she only wore black pants when she was menstruating because she had a heavy flow. A demeaning and deplorable practice gone unpunished.

36. Defendant's agent Ms. Hill in the presence of Mr. Nunez spoke to African American and Latino employees on a daily basis in a demeaning and demoralizing fashion while unloading and restocking product in its store, and she on occasions only provided bottled water to Caucasian employees.

37. Mr. Sanders was allowed to play music containing lyrics such as "nigger", "bitches", "hoes" and "sluts" in the store. Plaintiff as well as other employees complained about the music being played to Ms. Nunez to no avail. Ms. Hill, Mr. Nunez and Wilhelmy had full knowledge of the music being played.

38. Circa September 20, 2017 the Plaintiff gave her two-weeks notice in light of the Defendant's agents' refusal to address the "spook" sign, the racist misogynistic music, the disparate treatment of African Americans and Latino employees and reneging on its promise of promotion.

39. October 9, 2017, the Plaintiff removed the offensive and humiliating sign and once again exercised her right to protected speech and filed a complaint with the Defendant's corporate office addressing the disparate treatment of the African American and Latino's in the Waterbury, Ct store.

40. October 13, 2017, Plaintiff's last day she was forced to work alone, Ms. Hill as her direct supervisor refused to speak to her, someone placed a banana placed on her workstation and Plaintiff witnessed Defendant's agents' Ms. Hill, Mr. Nunez and Wilhemy listening to Mr. Sanders ranting about having to watch his back because he was being labeled a racist.

## EXHAUSTION OF ADMINISTRATIVE REQUIREMENTS

41. February 27, 2018, Plaintiff filed a charge of retaliation and discrimination based on race, age and sex with the State of Connecticut Commission on Human Rights and Opportunities.

42. Mr. Nunez during the Commission on Human Rights and Opportunities questioning stated that the Plaintiff did not receive the promotion because Mr. Sanders performed the task better and that she had attendance issues. Mr. Nunez and Wilhelmy stated they did not see the spook sign and that they found no issue with the racist and misogynistic music being played.

43. April 1, 2019 the Commission issued an adverse finding against the Defendant and its agents, finding reasonable cause "…for believing that an unfair practice was committed as alleged…"

44. September 12, 2019, Plaintiff began the public hearing process with the Defendant's agents'. A settlement conference on November 2, 2019 with the Defendant's agents' resulted in the Plaintiff requesting a release of jurisdiction.

45. November 12, 2019 the Plaintiff received a Release of Jurisdiction.

46. Any and all other prerequisites to the filing of this lawsuit have been met.

## FIRST CLAIM FOR RELIEF
### Hostile Work Environment Based on Race in Violation of
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 1981(a)(b), § 2000e-2

47. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

48. 42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

49. "'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b).
50. Plaintiff is a "person within the jurisdiction of the United States."
51. Defendant and their agents subjected Plaintiff to unwelcome racial harassment, the harassment was based on race, the harassment affected a term, condition, or privilege of employment.
52. This conduct was severe and pervasive. On a regular, and sometimes daily basis, Plaintiff witnessed agents of Target view and hear the race based harassment as alleged.
53. Plaintiff and co-workers multiple complaints to agents of the Defendant did not cause the behavior to cease creating a work environment for the Plaintiff that was hostile and heavily charged with race discrimination.
54. A reasonable person of African American race in Plaintiff's position would have found the work environment to be hostile and polluted by race discrimination.
55. Management level employees, agents of the Defendant, did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise reasonable care to prevent or stop it.
56. As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.
57. Defendant's agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

## SECOND CLAIM FOR RELIEF
### Disparate Impact Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e-2(a), § 1981

58. Plaintiff incorporates by reference the allegations in all preceding paragraphs.
59. Defendants' violated their policy and practice of promotion, which has harmed, and continues to harm Plaintiff.
60. Defendant and its agents' in violating its policy and practice on employees who receive written counseling statements, has harmed and continues to harm the Plaintiff.
61. Defendant and its agents' in violating its policy and practice of not engaging in the "[w]illful falsification of any record, report or company document", harmed and continues to harm the Plaintiff, and constitutes unlawful discrimination on the basis of race, ethnicity, color, and/or national origin in violation of 42 U.S.C §§ 2000e et seq.

## THIRD CLAIM FOR RELIEF
### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, §2000e-3(a)

62. Plaintiff incorporates by reference the allegations in all preceding paragraphs.
63. Plaintiff complained to Defendants' agents her belief that racial bias in favor of the less qualified Caucasian male was the direct cause of her not receiving a promotion.

64. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).
65. As a result of Plaintiff's complaint, Defendant's agents' and Mr. Sanders took materially adverse actions against Plaintiff, including, but not limited to, creating a hostile work environment and constructively discharging her from her employment.
66. Defendant and it agents retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII and §1981.
67. As a direct, legal and proximate result of discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.
68. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

## FOURTH CLAIM FOR RELIEF
### Constructive Discharge in Violation of
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

69. Plaintiff incorporates by reference the allegations in all preceding paragraphs.
70. Defendant, their agents' and Sanders created discriminatory and intolerable working conditions for Plaintiff.
71. A reasonable person in Plaintiff's position would have felt compelled to resign under these conditions.
72. Plaintiff did in fact resign from her position because of these conditions.
73. As a direct, legal and proximate result of discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.
74. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

## FIFTH CLAIM FOR RELIEF
### Race Discrimination (Disparate Treatment) in Violation of
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

75. Plaintiff incorporates by reference the allegations in all preceding paragraphs.
76. The Defendant and its agents' conduct as alleged at length herein constitute discrimination based on race in violation of Title VII and 42 U.S.C. The stated reasons for the Defendant and its agents' conduct were not the true reasons, but instead were pretext to hide the Defendant and its agents' discriminatory animus.
77. The Plaintiff's race was the determining factor and/or a motivating factor in Defendant and its agents' adverse employment action.
78. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.
79. Defendant and its agents' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

## SIXTH CLAIM FOR RELIEF
### Negligent Supervision

80. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

81. Defendant and its agents' had authority to supervise their employees.

82. Plaintiff is informed and believes and thereon alleges that Defendant and its agents' knew or reasonably should have known that their failure adequately to supervise their employees created the risk of the commission, by those employees, of the wrongful conduct alleged but that Defendant and their agents' failed to take corrective action.

83. Plaintiff is informed and believes and thereon alleges that Defendant and its agents' failure to take appropriate corrective action resulted in the commission of the wrongful conduct alleged, and caused Plaintiff to suffer loss and harm.

84. As a direct, legal and proximate result of Defendant and it agents' negligence, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

1. Order Defendant to make whole Plaintiff by providing compensation for back pay resulting from the unlawful employment practices described in the above paragraphs, in an amount to be determined at trial.

2. Order Defendant to make whole Plaintiff by providing compensation for emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

3. Order Defendant to pay Plaintiff punitive damages for its malicious and reckless conduct, as described in paragraphs above, in an amount to be determined at trial.

4. Front pay (including pay increases), to be determined at trial, until Plaintiff reaches the age of 65 years when she would have retired from Target but for the discriminatory and retaliatory treatment she was subjected to.

5. For interest on lost wages, compensation, and damages, including pre- and post judgment interest and an upward adjustment for inflation.

6. Cost and reasonable attorney consulting fees she may incur with this lawsuit.

7. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

The Plaintiff requests trial by jury.

Dated February 10, 2020

Respectfully submitted,

*Bernadette Taylor Lockett*
Bernadette Taylor Lockett
Pro Se
441 Clark Avenue
Unit 29
Bristol, Ct. 06010
203-565-7154

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

Bernadette T. Lockett                                  CHRO No. 1830461

vs.                                                    EEOC No. 16A-2018-00883

Target
**RESPONDENT**

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

**DATE:** November 12, 2019

_____
Tanya A. Hughes, Executive Director

Service:
Complainant: lockettsx4@aol.com
Respondent's counsel: john.stretton@ogletreedeakins.com



# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES
West Central Region Office, 55 West Main Street, 2nd Floor, Suite 210, Waterbury, CT 06702

*Promoting Equality and Justice for all People*

**RETURN TO CHRO BY:**   Suzanne Westhaver – February 19, 2019

February 4, 2019

John G. Stretton
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Two Stamford Plaza, 281 Tresser Blvd. Suite 602
Stamford, CT  06901

**SUBJECT:**   **DRAFT REASONABLE CAUSE FINDING**
**CHRO #**1830461 Lockett vs. Target
**EEOC #** 16A201800883

Dear Parties:

Transmitted herewith is a draft summary of Reasonable Cause Finding prepared by the investigator assigned to your complaint. I have reviewed it preliminarily and concur with it. However, prior to taking final action, I am providing you with an opportunity to comment. You have fifteen calendar (15) days from the date of this letter to provide me with any written comments concerning the investigator's proposed findings. During this period, you may also review the materials in the case file and reference these in your comments. Unless I hear from you within this period, the investigation will be closed and the Commission shall proceed with its processing of the complaint.

If you do submit written comments, they will be reviewed and considered. However, if your comments do not rebut the substance of the investigator's summary or present new evidence that requires further investigation, the investigator's draft summary will be finalized.